JOSÉ A. CABRANES, Circuit Judge,
joined by DENNIS JACOBS, REENA RAGGI, and DEBRA ANN LIVINGSTON, Circuit Judges,
dissenting from the order denying rehearing en banc:
The question presented in this civil case is whether the RICO statute[1] applies ex-traterritorially. \
This is an important question, and it has been answered in a novel and artful way by a panel of our Court. Absent review by the Supreme Court, the panel’s interpretation will have a significant and long-term adverse impact on activities abroad that we have heretofore assumed were governed primarily by the laws of the territories where those activities occurred.
After a close and considered vote, the en banc court has decided to forgo the possibility of reviewing the panel’s opinion.[2] From that regrettable decision I respectfully dissent.
If this decision remains undisturbed, the prevailing plaintiffs here, the European Community and its member states,[3] will have achieved a pyrrhic victory, and one that the Community’s constituents will have cause to regret in the years ahead. Why? Because its citizens, natural and corporate, are among the likely targets of *129 future RICO actions under the panel’s interpretation of the statute.
The panel holds that RICO itself has an-extraterritorial reach if and when one of RICO’s predicate statutes has an extraterritorial reach. This reasoning conflates the question of whether RICO applies ex-traterritorially with whether the statute’s definition of “racketeering activity” includes predicate offenses that can be charged abroad. If RICO were merely an additional criminal — or, as is often the case, civil — consequence for committing predicate offenses, this view might have some merit. But, as Judge Raggi’s compelling dissent makes clear, RICO is not simply designed to pile on punishment. Rather, the statute prohibits distinct behavior: conducting, controlling,' or funding an enterprise through a pattern of racketeering.
The panel overlooks the statutory text, going straight to the definition of “racketeering activity,” determining that some predicate acts are punishable abroad, and then splitting plaintiffs’ RICO claim in two — one “domestic” RICO claim for those predicate acts that are not punishable abroad and that defendants allegedly committed in the United States, and one “extraterritorial” RICO claim for those predicate acts that are punishable abroad. This reasoning is flatly inconsistent with years of precedent from this Court, and the Supreme Court, that treats RICO as an offense distinct from its predicate acts. Although it is indisputable that Congress intended for certain RICO predicate statutes to apply to actions or events abroad, there is no clear basis for concluding that Congress intended for RICO itself to go along with them. For this reason, the panel’s opinion also may allow an end-run around the revivified presumption against extraterritoriality in Morrison[4] and Kiobel.[5]
Indeed, there are many important criminal statutes which expressly make extraterritorial activity indictable but say nothing about the availability of RICO in the circumstances they address — perhaps because legislators were focusing more on the prosecutions of crimes, including some involving acts of terrorism, and not’ on the treble damages and attorney’s fees available under civil actions for damages. It is thus a red herring at best to suggest that, by incorporating a number of mostly terrorism-related crimes within RICO,[6] Congress also intended — without any clear expression of affirmative intent — to give global reach to a whole host of non-terrorism-related [7] civil claims.[8] This is a case of *130 Congress giving an inch and the panel taking a mile. The dubiousness of the panel’s stretched reasoning — and its direct tension with Morrison and Kiobel — is only-further reinforced by the fact that a plaintiff need not actually prove any of the extraterritorial predicates in order to sustain a civil claim for RICO activities alleged to have occurred entirely outside the United States.[9].
To summarize: After more than four decades of experience with this complicated statute, a panel of our Court has discovered and announced a new, and potentially far-reaching, judicial interpretation of that statute — one that finds little support in the history of the statute, its implementation, or the precedents of the Supreme Court; that will encourage a new litigation industry exposing business activities abroad to civil claims of “racketeering”;[10] and that will invite our courts to adjudicate civil RICO claims grounded on extraterritorial activities anywhere in the world.

. 18 U.S.C. §§ 1961-1968.

. Note that “the decision not to convene the en banc court does not necessarily mean that a case either lacks significance or was correctly decided. Indeed, the contrary may be true.” United States v. Taylor, 752 F.3d 254, 256 (2d Cir.2014) (Cabranes, /., dissenting from the denial of rehearing en banc) (describing the special history of en bancs in the Second Circuit and highlighting the various factors that may explain why a judge would vote in favor or against the convening of an en banc court).

.The European Community was "a governmental body created through collaboration among the majority of the nations of Europe.” Appellant’s Br. at 6. Since this lawsuit was originally filed, the European Community has been incorporated into the European Union. See European Cmty. v. RJR Nabisco, Inc., 764 F.3d 129, 148 (2d Cir.2014).

. Morrison v. Nat'l Aus. Bank Ltd., 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010).

. Kiobel v. Royal Dutch Petroleum Co., - U.S. -, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013).

. The panel’s opinion, Judge Hall’s concurrence in support of the order denying rehearing en banc, and Judge Lynch’s dissent from the order denying rehearing en banc are.all very keen to locate RICO’s extraterritoriality within its terrorism-focused predicates. See RJR Nabisco, 764 F.3d at 136 (listing a number of RICO’s predicate statutes focused on terrorism offenses); Hall Concurrence at 124-25 ("Many of the predicates that apply to foreign conduct relate to international terrorism.");' Lynch Dissent at 141-42 (posing a hypothetical scenario involving a "revolutionary group based largely in a Middle Eastern country” that "plantfs] a bomb near a federal office building" and ”behead[s] an abducted American j ournalist’ ’).

.Indeed, RICO incorporates many predicates that are quite removed from the dark world of international terrorism. See 18 U.S.C. § 1961(1) (incorporating statutes that outlaw trafficking in counterfeit copyrighted work (18 U.S.C. § 2319), embezzlement from pension and welfare funds (18 U.S.C. § 664), and other activities that have little connection to terrorism).

. For example, plaintiffs in this Circuit, and others, have sought to use civil RICO claims to challenge supposedly unlawful business practices conducted in foreign countries by alleging, as a predicate act, that one aspect of the scheme involved laundering money through the United States in violation of 18 U.S.C. § 1951. See, e.g., Hourani v. Mirtchev, 943 F.Supp.2d 159, 168 (D.D.C.2013) (dismissing RICO claim that arose out of "extortion in Kazakhstan by a Kazakh actor of Plaintiffs’ Kazakhstan-based assets"); Republic of Iraq v. ABB AG, 920 F.Supp.2d 517 (S.D.N.Y.2013) (dismissing RICO claim that related to alleged mismanagement in Iraq of the United Nations Oil-for-Food program); Cedeno v. In-tech Grp., Inc., 733 F.Supp.2d 471 (S.D.N.Y.2010) (dismissing RICO claim that alleged, inter alia, that Venezuelan officials and entities damaged a company incorporated in the British Virgin Islands). The panel in RJR Nabisco, which identifies money laundering as a predicate act that extends RICO extraterritorially, welcomes such claims into federal court. See 764 F.3d at 139-40.

. It is also worth noting that the United States, in its amicus brief, does not adopt the ■ predicate-centric view of the panel. Needless to say, the Government also does not invoke the panel’s view that RICO’s criminal predicates extend the extraterritorial jurisdiction of the statute for non-terrorism-related civil claims. See Brief of the United States 9-20.

. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 529-30, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (Powell, I., dissenting) (lamenting the expansion of RICO to include civil racketeering charges "brought — in the unfettered discretion of private litigants — in federal court against legitimate businesses seeking treble damages in ordinary fraud and contract cases”).